# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

**ANNA KATHERINE PICKETT**                                                                         **PLAINTIFF**

**v.**                            **CIVIL ACTION NO. 2:18-CV-214-KS-JCG**

**MISSISSIPPI BOARD OF ANIMAL**
**HEALTH**                                                                                  **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

For the reasons below, the Court **denies** Defendant's Motion for Summary Judgment [22].

## I. BACKGROUND

This is a Title VII retaliation case. In August 2012, Plaintiff began working for Sanderson Farms, a chicken producer in Collins, Mississippi. In December 2016, Sanderson Farms terminated Plaintiff's employment. On March 10, 2017, Plaintiff filed an EEOC charge alleging that Sanderson Farms fired her because of her sex. On June 1, 2017, Plaintiff began working for Defendant, the Mississippi Board of Animal Health, as a poultry epidemiologist. Although Plaintiff did not meet the qualifications for the position, Defendant's Executive Director, James Watson, "made changes . . . to the position requirements to hire her." Exhibit 2 to Motion for Summary Judgment at 8-9, *Pickett v. Miss. Bd. of Animal Health*, No. 2:18-CV-214-KS-JCG (S.D. Miss. Oct. 10, 2019), ECF No. 22-2. Watson knew that Sanderson Farms had fired Plaintiff, but he did not know that Plaintiff had filed an EEOC charge.

In July 2017, Phil Stayer, a veterinarian employed by Sanderson Farms and member of Defendant's Board of Directors, told Watson about Plaintiff's EEOC charge. Stayer expressed concern to Watson that Plaintiff's "presence there would not be a good thing for Sanderson." Exhibit 11 to Response at 4, *Pickett v. Miss. Bd. of Animal Health*, No. 2:18-CV-214-KS-JCG (S.D. Miss. Nov. 7, 2019), ECF No. 26-11. Stayer requested that Plaintiff not work with Sanderson's poultry farmers, questioning her ability to fairly apply state regulations.

Later that month, Watson and his deputy director, Brigid Elchos, met with Plaintiff and asked her about the legal proceedings against Sanderson Farms. Plaintiff admitted that she had filed an EEOC charge against her former employer. According to her, Watson and Elchos "said that if they had known . . . that from the beginning that it might would have affected my employment with the Board of Animal Health . . . ." Exhibit 1 to Motion for Summary Judgment at 29-30, *Pickett v. Miss. Bd. of Animal Health*, No. 2:18-CV-214-KS-JCG (S.D. Miss. Oct. 10, 2019), ECF No. 22-1. Watson told Plaintiff that he would check with Defendant's lawyer as to whether there was a conflict of interests, but Plaintiff continued to perform her job without any limitation. In August 2017, Watson told Plaintiff that he had received a "tentative ruling" that she was cleared to inspect Sanderson Farms poultry growers. Exhibit 15 to Response at 4, *Pickett v. Miss. Bd. of Animal Health*, No. 2:18-CV-214-KS-JCG (S.D. Miss. Nov. 7, 2019), ECF No. 26-15.

On December 15, 2017, Plaintiff filed a lawsuit against Sanderson Farms,

2

alleging that it had violated Title VII and the Equal Pay Act. Plaintiff continued working full-time as an epidemiologist for Defendant, but she alleges that Defendant's employees began to treat her differently after they learned of her EEOC charge and lawsuit against Sanderson Farms. For example, she claims that her immediate supervisor stopped including her in office work; that Watson began referring to her as a "field inspector," rather than as an epidemiologist; that a coworker told her that Watson didn't trust her to take a certain computer home; and that Watson excluded her from certain meetings and from the management of disease outbreaks.

At the end of Plaintiff's probationary employment period, Watson met with two of Plaintiff's supervisors to evaluate her performance and decide whether she would continue to work for Defendant. One of them told Watson that Plaintiff "was not a good fit for [the] agency." Exhibit 3 to Motion for Summary Judgment at 34, *Pickett v. Miss. Bd. of Animal Health*, No. 2:18-CV-214-KS-JCG (S.D. Miss. Oct. 10, 2019), ECF No. 22-3. Accordingly, on April 16, 2018, Watson terminated Plaintiff's employment, effective immediately. According to Plaintiff, he told her, "We decided it's not a good fit," and "You're still within your one-year probationary period, so we can fire you without any cause at all." Exhibit 1 [22-1], at 70-71. He claimed that Plaintiff had not been "trustworthy" because she had not told "the truth from the beginning . . . ." *Id.* at 71. He said: "Nobody wants to work with someone they can't trust." *Id.* He gave her a letter of termination that did not provide a reason for the

termination. Exhibit 20 to Response, *Pickett v. Miss. Bd. of Animal Health*, No. 2:18-CV-214-KS-JCG (S.D. Miss. Nov. 7, 2019), ECF No. 26-20. Likewise, the separation document in Plaintiff's state personnel file does not provide a reason for the termination, but it does provide that Plaintiff did not leave the job "in good standing." Exhibit 21 to Response, *Pickett v. Miss. Bd. of Animal Health*, No. 2:18-CV-214-KS-JCG (S.D. Miss. Nov. 7, 2019), ECF No. 26-21.

After exhausting her EEOC remedies, Plaintiff filed this lawsuit against Defendant. She alleges that Defendant fired her in retaliation for filing an EEOC charge and lawsuit against her former employer, Sanderson Farms. Defendant filed a Motion for Summary Judgment [22], which the Court now considers.

## II. STANDARD OF REVIEW

Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010). "Where the burden of production at trial ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (punctuation omitted). The nonmovant "must come forward with specific facts showing that there is a genuine issue for trial." *Id.* "An issue is material if its resolution could affect the outcome of the action." *Sierra Club*, 627 F.3d at 138. "An

4

issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Cuadra*, 626 F.3d at 812.

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009). When deciding whether a genuine fact issue exists, "the court must view the facts and the inference to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club*, 627 F.3d at 138. However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002).

### III. DISCUSSION

Plaintiff contends that Defendant fired her in retaliation for filing an EEOC charge and lawsuit against her former employer, Sanderson Farms. "Title VII prohibits retaliation against employees who engage in protected conduct, such as filing a complaint of discrimination." *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 325 (5th Cir. 2002). To make out a *prima face* case of retaliation under Title VII, Plaintiff must prove that "(1) she engaged in activity protected under Title VII, (2) an adverse employment action occurred, and (3) there was a causal connection between her protected activity and the adverse employment decision." *Gardner v. CLC of Pascagoula, LLC*, 915 F.3d 320, 327-28 (5th Cir. 2019).

Title VII retaliation claims are analyzed under the *McDonnell Douglas* burden-

shifting framework. *Royal v. CCC & R Tres Arboles, LLC*, 736 F.3d 396, 400 (5th Cir. 2013). Under the first step of this framework, "the plaintiff must , , , present evidence of a prima facie case of" retaliation. *Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011). At this initial stage, "a plaintiff can meet his burden of causation simply by showing close enough timing between his protected activity and his adverse employment action." *Garcia v. Prof'l Contract Servs., Inc.*, 938 F.3d 236, 243 (5th Cir. 2019).

If the plaintiff presents such evidence, "discrimination is presumed, and the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the underlying employment action." *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 317 (5th Cir. 2004). "The employer's burden is one of production, not persuasion, and does not involve a credibility assessment." *Black v. Pan Am Labs., LLC*, 646 F.3d 254, 259 (5th Cir. 2011).

If the defendant can articulate a legitimate, nondiscriminatory reason for the underlying employment action, the presumption of discrimination disappears, and the plaintiff must prove that the employer's "stated explanation . . . was mere pretext." *Garcia*, 938 F.3d at 243. At the pretext stage, "[t]o establish the requisite causal connection between the protected activity and the adverse employment action, a plaintiff must show that his or her protected activity was a but-for cause of the alleged adverse action by the employer." *Fisher v. Lufkin Indus., Inc.*, 847 F.3d 752, 757 (5th Cir. 2017); *Garcia*, 938 F.3d at 243-44. In other words, the plaintiff must

6

prove "that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360, 133 S. Ct. 2517, 186 L. Ed. 2d 503 (2013). "[T]emporal proximity alone is insufficient to prove but-for causation." *Strong v. Univ. Healthcare Sys., LLC*, 482 F.3d 802, 808 (5th Cir. 2007). "But the combination of suspicious timing with other significant evidence of pretext, can be sufficient to survive summary judgment." *United States ex rel. King v. Solvay Pharms., Inc.*, 871 F.3d 318, 334 (5th Cir. 2017).

Defendant concedes that Plaintiff can prove the first two elements of a retaliation claim – that she engaged in a protected activity, and that she suffered an adverse employment action. The only dispute is whether Defendant fired Plaintiff because of her protected activity.

Plaintiff presented sufficient evidence to meet her initial burden. First, Plaintiff testified that after Watson learned of her EEOC charge against Sanderson Farms, he and Elchos told her "that if they had known . . . that from the beginning that it might would have affected my employment with the Board of Animal Health . . . ," which suggests that Defendant would not have hired her if it had known of the charge. Exhibit 1 [22-1], at 29-30.

Second, construing the evidence in the light most favorable to Plaintiff, the timeline of events suggests a causative relationship between Watson learning of Plaintiff's charge against Sanderson Farms and later terminating her employment at

7

the end of the probationary period. According to Plaintiff, Defendant's employees began to treat her differently after they learned of her EEOC charge and lawsuit against Sanderson Farms. She testified as to numerous examples of such behavior. Then, once her probationary employment period was up, Watson fired her without providing an official reason. However, Plaintiff testified that Watson told her that she was not "trustworthy" because she had not told "the truth from the beginning . . . ," which could reasonably be construed as referring to her failure to inform Defendant of her charge against Sanderson Farms. Exhibit 1 [22-1], at 71.

Defendant has articulated a legitimate, nondiscriminatory reason for its termination of Plaintiff's employment. In briefing, Defendant stated that Watson fired Plaintiff because, in Watson's opinion, Plaintiff demonstrated poor judgment. For example, Watson believed that Plaintiff should have told him that she had filed an EEOC charge against Sanderson Farms. He testified: "[I]t was my expectation that she would have let me know there was potentially something that could create an issue between our state agency and a company that we regulate and work with." Exhibit 2 [22-2], at 10. Also, Plaintiff cohabitated with an employee of Sanderson Farms, and Defendant contends that this created a potential biosecurity risk of spreading an avian disease, as Plaintiff inspected the facilities of numerous growers in the region. Watson testified: "Because we deal with these companies that are multimillion dollar organizations, and the impact of diseases, especially since we move from farm to farm and if we're involved in being the ones that transmit disease,

then that . . . puts us in a bad light in trying to work with companies and carry out our disease eradication efforts." *Id.* at 30. He concluded: "[S]he did not demonstrate to me the fact that I could trust her to recognize when certain actions and certain activities posed a risk for our agency." *Id.* at 43.

Therefore, the burden shifts to Plaintiff to prove "that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Nassar*, 570 U.S. at 360. In the Court's opinion, Plaintiff has met this burden. First, the Court notes the same evidence cited above. Plaintiff testified that Watson and Elchos suggested that she would not have been hired if they had known about the EEOC charge she had filed against Sanderson Farms. Exhibit 1 [22-1], at 29-30. Second, as the Court noted above, when the evidence is construed in the light most favorable to Plaintiff, the timeline of events suggests a causative relationship. Plaintiff testified that Defendant's employees began to treat her differently after they learned of her EEOC charge and lawsuit against Sanderson Farms, and she gave several specific examples of such behavior.

Additionally, the record contains numerous different explanations for why Defendant fired her. First, the documentation accompanying her termination provides no reason whatsoever. Second, Plaintiff testified that Watson told her she was fired because he didn't find her trustworthy. Third, Watson testified that he fired Plaintiff because she displayed poor judgment. Fourth, Plaintiff's coworker, Jeffrey Graham, testified that Nikki Jefcoat, Plaintiff's immediate supervisor, said she

9

couldn't tell him why Plaintiff was fired. Exhibit 10 to Response at 3, *Pickett v. Miss. Bd. of Animal Health*, No. 2:18-CV-214-KS-JCG (S.D. Miss. Nov. 7, 2019), ECF No. 26-10. Fifth, Elchos testified that Plaintiff displayed "a lack of judgment and a poor work attitude." Exhibit 13 to Response at 8, *Pickett v. Miss. Bd. of Animal Health*, No. 2:18-CV-214-KS-JCG (S.D. Miss. Nov. 7, 2019), ECF No. 26-13. She cited a specific occurrence at a training session in September 2017. *Id.* at 8-9.

The record also contains evidence which, when construed in the light most favorable to Plaintiff, casts doubt on some of these purported reasons for Plaintiff's termination. As noted above, Watson cited Plaintiff's cohabitation with a Sanderson Farms employee as an example of poor judgment. But even though Watson learned about the cohabitation – and purported biosecurity risk – in February 2018, he didn't fire Plaintiff until two months later. Exhibit 8 to Response at 13, *Pickett v. Miss. Bd. of Animal Health*, No. 2:18-CV-214-KS-JCG (S.D. Miss. Nov. 7, 2019), ECF No. 26-8. Moreover, it is undisputed that there is no agency policy barring such relationships, and that Plaintiff did not violate any agency rule. In fact, multiple witnesses testified that some of Defendant's inspectors raise their own livestock, which presumably carries its own risk of cross-contamination.

Defendant contends that the timeline of events demonstrates that its decision to terminate Plaintiff was not caused by her protected activity. Defendant correctly notes that Watson didn't fire Plaintiff until nine months after he learned of her EEOC charge against Sanderson Farms, and four months after she filed the lawsuit against

Sanderson Farms. Therefore, Defendant argues that there is not enough temporal proximity between the events to prove causation.

Defendant is correct that "temporal proximity alone is insufficient to prove but-for causation." *Strong v. Univ. Healthcare Sys., LLC*, 482 F.3d 802, 808 (5th Cir. 2007). "But the combination of suspicious timing with other significant evidence of pretext, can be sufficient to survive summary judgment." *Solvay Pharms.*, 871 F.3d at 334. Here, Plaintiff is not relying solely on temporal proximity. Rather, there is additional evidence of pretext. Construing the evidence in the light most favorable to Plaintiff, a jury could conclude that Watson used the one-year probationary period and Plaintiff's at-will status as cover for retaliation, particularly in light of her testimony that Watson and Elchos told her that she would not have been hired if they had known about the EEOC charge. *See* Exhibit 1 [22-1], at 29-30.

## IV. CONCLUSION

For these reasons, the Court concludes that Plaintiff has presented sufficient evidence to create a genuine dispute of material fact as to whether Defendant proffered reason for her termination is pretext for retaliation. Accordingly, the Court **denies** Defendant's Motion for Summary Judgment [22].

SO ORDERED AND ADJUDGED this 13th day of January, 2020.

                                            /s/    Keith Starrett
                                                         KEITH STARRETT
                              UNITED STATES DISTRICT JUDGE