IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**ANNA KATHERINE PICKETT**                                       **PLAINTIFF**

v.                                      CIVIL ACTION NO. 2:18-CV-214-KS-JCG

**MISSISSIPPI BOARD OF ANIMAL**
**HEALTH**                                                      **DEFENDANT**


### MEMORANDUM OPINION AND ORDER

For the reasons below, the Court **grants in part and denies in part** Defendant's Motion for Judgment as a Matter of Law or Remittitur [52]. The Court remits Plaintiff's award of emotional damages from $100,000.00 to $75,000.00. Plaintiff may accept this amount or have a new trial on emotional damages. The Court denies Defendant's motion in all other respects.

### I. BACKGROUND

This is a Title VII retaliation case. The Court discussed its background in a Memorandum Opinion and Order [30] entered on January 13, 2020. *See Pickett v. Miss. Bd. of Animal Health*, 2020 WL 185023, at *1-*2 (S.D. Miss. Jan. 13, 2020). The Court held a jury trial on April 20-21, 2021. The jury returned a verdict in Plaintiff's favor and awarded her $53,124.00 in lost wages and $100,000.00 in emotional damages. Jury Verdict [43]. On June 4, 2021, Defendant filed a Motion for Judgment as a Matter of Law or Remittitur [52], which the Court now addresses.

## II. Discussion

### A. *Causation*

First, Defendant argues that it is entitled to judgment as a matter of law because Plaintiff presented insufficient evidence that it fired her because of her protected activity. Judgment as a matter of law is only appropriate "when a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on a particular issue . . . ." *Wickfire, LLC v. Woodruff*, 989 F.3d 343, 352 (5th Cir. 2021). The Court must "draw all reasonable inferences and resolve all credibility determinations in the light most favorable to the nonmoving party." *Id.* at 353. "A post-judgment motion for judgment as a matter of law should only be granted when the facts and inferences point so strongly in favor of the movant that a rational jury could not reach a contrary verdict." *Tercero v. Tex. Southmost College Dist.*, 989 F.3d 291, 299 (5th Cir. 2021).

Defendant argues that no reasonable jury could find that it fired Plaintiff because she filed an EEOC charge. Defendant contends that Plaintiff's failure to present any direct evidence of causation is fatal to her retaliation claim. "Title VII retaliation claims must be proven according to traditional principles of but-for causation." *Garcia v. Prof'l Contract Servs., Inc.*, 938 F.3d 236, 241 (5th Cir. 2019). A plaintiff may meet this burden with direct or circumstantial evidence. *Newbury v. City of Windcrest, Tex.*, 991 F.3d 672, 678 (5th Cir. 2021).

Plaintiff testified that Defendant knew she had been fired from Sanderson

Farms when it hired her. Exhibit A [52-1], at 19. She filed a charge of discrimination against Sanderson Farms in March 2017. Exhibit A [52-1], at 6. In July 2017, Dr. Watson, Plaintiff's boss, confronted her about the charge against Sanderson Farms. *Id.* at 13. Plaintiff testified that Watson admitted that Dr. Phil Stayer, an employee of Sanderson Farms and member of the Board of Animal Health, had told him about the charge of discrimination and argued that her employment by Defendant presented a conflict of interest. *Id.* at 14. According to Plaintiff, Watson said "that if he had known about . . . the lawsuit against Sanderson in the beginning, when he was interviewing [her], that it could have affected [her] position with [Defendant]." *Id.* at 18-19. She reiterated: "[H]e just said it would have had an impact on my job with the Board of Animal Health." *Id.* at 19. Plaintiff eventually filed a lawsuit against Sanderson Farms in December 2017. *Id.* at 17. She was fired by Defendant in April 2018. *Id.* at 90. According to Plaintiff, she never received any indication that there was a problem with her job performance, until after Stayer complained to Watson. *Id.* at 30-31.

As the Court recalls, Watson admitted that if he had known Plaintiff had filed a charge of discrimination against Sanderson Farms, it would have had an impact on his decision to hire her, although the parties did not attach a transcript of his testimony. Moreover, Phil Stayer admitted that he did not believe Plaintiff should be employed by Defendant as a field inspector because she had charged Sanderson Farms (which Defendant regulates) with discrimination, and he admitted that he

3

said as much to Watson. Finally, the Court recalls testimony at trial that Sanderson Farms controls a substantial portion of the poultry industry in the state of Mississippi. Based on all this evidence, a jury could reasonably conclude that Defendant fired Plaintiff because she had filed a charge of discrimination and/or lawsuit against Sanderson Farms.

## B.     *Mitigation of Damages*

Defendant also contends that it is entitled to a new trial because the Court improperly instructed the jury on the issue of mitigation. The Court has "great latitude in the framing and structure of jury instructions." *Nelson v. Texas Sugars, Inc.*, 838 F. App'x 39, 44 (5th Cir. 2020). To get a new trial, "the party challenging the instruction must show that the charge creates substantial and ineradicable doubt whether the jury has been properly guided in its deliberations." *Id.* The Court should "consider whether the instruction, taken as a whole, is a correct statement of the law and whether it clearly instructs the jurors as to the principles of law applicable to the factual issues confronting them." *Id.* Moreover, "a district court does not abuse its discretion by using a pattern jury instruction that correctly states the law." *Id.*

First, Defendant argues that the Court erred by instructing the jury that Defendant was required to prove the availability of substantially similar employment despite Plaintiff's testimony that she made no effort to find equivalent employment in the poultry industry.

The Court gave the jury the following instruction regarding mitigation of

4

damages:

> You should consider the following elements of actual damages, and no others: (1) the amount of back pay and benefits Plaintiff would have earned in her employment with Defendant if she had not been terminated from April 16, 2018, to the date of your verdict, minus the amount of earnings and benefits that Plaintiff received from employment during that time . . . .
>
> Back pay includes the amounts the evidence shows Plaintiff would have earned had she remained an employee of Defendant. These amounts include wages or salary and such benefits as life and health insurance, and contributions to retirement. You must subtract the amounts of earnings and benefits Defendant proves by a preponderance of the evidence Plaintiff received during the period in question.
>
> Defendant claims that Plaintiff failed to mitigate her damages. Plaintiff has a duty under the law to mitigate her damages, that is, to exercise reasonable diligence under the circumstances to minimize her damages.
>
> To succeed on this defense, Defendant must prove, by a preponderance of the evidence: (a) that there was substantially equivalent employment available; (b) Plaintiff failed to use reasonable diligence in seeking those positions; and (c) the amount by which Plaintiff's damages were increased by her failure to take such reasonable actions.
>
> "Substantially equivalent employment" in this context means a job that has virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status as the job she lost. Plaintiff does not have to accept a job that is dissimilar to the one she lost, one that would be a demotion, or one that would be demeaning. The reasonableness of Plaintiff's diligence should be evaluated in light of her individual characteristics and the job market.

Jury Instructions [46], at 10-12.[1] Then, in the Verdict Form, the Court asked the jury: "Do you find that Plaintiff failed to reduce her damages through the exercise of

---

[1] This instruction was taken verbatim from the Fifth Circuit's Pattern Jury Instructions. Fifth Circuit Pattern Jury Instructions (Civil), § 11.14 (2020).

reasonable diligence in seeking, obtaining, and maintaining substantially equivalent employment after the date of her termination?" Verdict Form [44], at 2. The jury answered, "No." *Id.*

Defendant is correct that the Fifth Circuit has held "that if an employer proves that an employee has not made reasonable efforts to obtain work, the employer does not also have to establish the availability of substantially equivalent employment." *Sellers v. Delgado College*, 902 F.2d 1189, 1193 (5th Cir. 1990). In this case, the jury found that Plaintiff did not fail to exercise reasonable diligence in seeking, obtaining, and maintaining substantially equivalent employment after the date of her termination. *See* Verdict Form [44], at 2. Therefore, even if the Court erred by omitting an instruction that Defendant was not required to establish the availability of substantially equivalent employment if Plaintiff had not made reasonable efforts to obtain work, the error was harmless.[2]

Moreover, a plaintiff's "reasonable diligence" in obtaining "substantially equivalent employment" is a question of fact. *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1045 (5th Cir. 1998). "The reasonableness of a claimant's diligence must be

---

[2] A former version of the pattern instructions included Defendant's desired language. Fifth Circuit Pattern Jury Instructions (Civil), § 11.14 n. 5 (2020) (citing *Sellers*, 902 F.2d at 1193; *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 393 (5th Cir. 2003)). However, "recent district court cases have observed that *Sellers* conflicts with the previously decided *Sparks v. Griffin*, 460 F.2d 433, 443 (5th Cir. 1972)," and, therefore, the Committee on Civil Pattern Jury Instructions "conclude[d] that this language should not remain in a pattern instruction but that courts and counsel should be aware of the split." *Id.* This Court also notes that "[u]nder the rule of orderliness, one panel may not overrule a prior decision, right or wrong, unless there is an intervening change of authority." *Hines v. Quillivan*, 982 F.3d 266, 271 (5th Cir. 2020). Accordingly, *Sparks* is just as binding on this Court as *Sellers*.

6

evaluated in the light of the individual characteristics of the claimant and the job market." *Overman v. City of East Baton Rouge*, 656 F. App'x 664, 670 (5th Cir. 2016). Therefore, "a Title VII plaintiff's decision to attend school on a full-time basis does not always bar back pay during the period of enrollment." *Id.* (citing *Dailey v. Societe Generale*, 108 F.3d 451, 456-57 (2nd Cir. 1997); *Green v. Admin. of Tulane Educ. Fund*, 284 F.3d 642, 659 (5th Cir. 2002)). The Fifth Circuit has distinguished between a Title VII plaintiff "attending school only after a diligent, but ultimately unsuccessful, job hunt, and a plaintiff who takes herself out of the job market to attend school in the hope of gaining access to higher paying jobs, foregoing comparable employment in the meantime." *Id.* at 670-71.

Plaintiff testified that she went back to school to get a degree in nursing. She said: "I felt that I wouldn't be able to get a job in poultry anymore." Exhibit A [52-1], at 87. She elaborated: "[A]fter being fired from two chicken companies, . . . and having a lawsuit against Sanderson Farms, I figured no one would want to hire me after that, and I just know my difficulty of finding a job after Sanderson Farms. I was applying for jobs, for about 30 jobs a night after Sanderson, and I wasn't hearing back from anyone." *Id.* at 41. Therefore, she concluded that she "needed to figure out something else to do with my life because I had bills to pay and I needed to do something that would end up bettering my life and get me in a different direction other than chickens, because chickens obviously wasn't working out for me anymore." *Id.*

Although she went back to school, Plaintiff affirmed that she tried to make as much money as she could after Defendant terminated her. *Id.* at 44. She got a job as an office assistant while she was in school, and during breaks from school she worked at an OB-GYN office. *Id.* at 42-43. She is currently a registered nurse in the surgery department at Merit Health Wesley in Hattiesburg, Mississippi, and she makes more than she would have had she remained employed by Defendant. *Id.* at 40, 45.

Within the context of this particular case, the Court believes that a reasonable jury could find that Plaintiff exercised reasonable diligence in mitigating her damages after Defendant fired her. This was the second job in the poultry industry from which Plaintiff had been fired within a relatively short period of time. She believed that her first poultry employer, Sanderson Farms, fired her because of her sex. Then a jury found that Defendant – the state agency charged with regulating poultry farms – fired her because she filed a charge of discrimination against Sanderson Farms. There was evidence at trial that Sanderson Farms controls a substantial portion of the poultry industry in Mississippi, and that Phil Stayer, an employee of Sanderson Farms, was on the Board of Animal Health and told Plaintiff's boss that he should not have hired her.

Plaintiff has not rested on her laurels since Defendant fired her. In fact, it is arguable that her decision to go back to school reduced the amount of back pay that Defendant would have owed in this case, given the water under the bridge between her and Sanderson Farms and her higher earnings since she became a nurse. To

8

vacate the back pay award in these circumstances would invade the jury's role as a fact-finder and provide a disincentive for Title VII plaintiffs to mitigate their damages. The Court declines to do so.

Defendant also argues that the Court should have instructed the jury that Plaintiff was not ready, willing, and able for full-time employment because she decided to make a career change – essentially asking the Court to direct the jury to find in its favor on mitigation. As noted above, "a Title VII plaintiff's decision to attend school on a full-time basis does not always bar back pay during the period of enrollment." *Overman*, 656 F. App'x at 670; *see also Green*, 284 F.3d at 659. Moreover, a plaintiff's "reasonable diligence" in obtaining "substantially equivalent employment" is a question of fact. *Migis*, 135 F.3d at 1045. For the same reasons articulated above, the Court finds that there was sufficient evidence from which a jury could conclude that Plaintiff exercised reasonable diligence in obtaining substantially equivalent employment. Therefore, the Court did not err by declining to direct the jury to find in Defendant's favor on the question of mitigation.

## C. *Emotional Damages*

Finally, Defendant argues that the jury's award of emotional damages was excessive in light of the evidence presented at trial, and that the Court should remit the jury's award of emotional damages to $0.00. Alternatively, Defendant argues that the Court should order a new trial on Plaintiff's emotional damages.

### 1. *Sufficiency*

9

Defendant's argument for a *total* remittitur is effectively a challenge to the sufficiency of the evidence in support of the jury's award of emotional damages, rather than an argument that the award was excessive. *See Longoria v. Hunter Express, Ltd.*, 932 F.3d 360, 363-64 (5th Cir. 2019). A "sufficiency challenge asks only whether there is any evidence for a jury's award; if there is, the judge's job is at an end." *Id.* at 364.

Plaintiff testified that when Watson fired her, she noted that she hadn't received any write-ups or received any negative feedback from her immediate supervisor. Exhibit A [52-1], at 34. According to her, Watson replied, "[W]ell, you are still within your probation – one-year probationary period and pretty much we can git rid of you for any reason at all, or no reason at all." *Id.* He said that she had not been "truthful since the beginning," and that "no one wants to work with someone they can't trust," presumably referring to the fact that she did not tell him that she had filed a charge of discrimination against Sanderson Farms. *Id.* Plaintiff further testified that after her termination, she was "stressed" after Defendant fired her. *Id.* at 42. She took a job as an office assistant "just to try to get some kind of income coming in," but she was "really stressed about trying to get [her] bills paid and trying to get any kind of work down that [she] could . . . ." *Id.* at 43. This evidence supports an award of some emotional damages.

2. *Excessiveness*

"An excessiveness challenge," however, "requires more extensive scrutiny,

10

including – as will be seen – consideration of verdicts in similar cases." *Longoria*, 932 F.3d at 364. The Fifth Circuit has highlighted two principles to guide the Court's analysis. First, "there must be a specific discernable injury to the claimant's emotional state, proven with evidence regarding the nature and extent of the harm . . . ." *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 488 (5th Cir. 2001). "[H]urt feelings, anger and frustration are part of life . . . and [are] not the types of harm that could support a mental anguish award," but "[d]amages for emotional distress may be appropriate . . . where the plaintiff suffers sleeplessness, anxiety, stress, marital problems, and humiliation." *Id.*

Next, the Fifth Circuit requires "more than vague allegations to establish existence of the injury." *Id.* "[E]motional distress is fraught with vagueness and speculation, and is easily susceptible to fictitious and trivial claims . . . ." *Id.* Therefore, the Court must "scrupulously analyze an award of compensatory damages for a claim of emotional distress predicated exclusively on the plaintiff's testimony." *Id.* However, "[i]n certain cases a plaintiff's testimony alone may be sufficient proof of mental damages." *Id.*

With these general principles guiding its analysis, the Court applies the "maximum recovery rule," which requires examination of "other published decisions from the relevant jurisdiction . . . involving comparable facts." *Id.* Generally, the Court "permits a verdict at 150% of the highest inflation-adjusted recovery in an analogous, published decision." *Id.*

As one might expect given the inherently subjective nature of emotional damages, the Fifth Circuit's "disposition of motions for the remittitur of emotional damages varies widely from case to case." *Hardy v. City of Tupelo*, 2009 WL 3678262, at *23 n. 7 (N.D. Miss. Nov. 2, 2009) (citing cases). This is not surprising. "'Judgments regarding noneconomic damages are notoriously variable . . . .'" *Id.* (quoting *Forsyth v. City of Dallas*, 91 F.3d 769, 774 (5th Cir. 1996)); *see also McCaig v. Wells Fargo Bank (Texas), N.A.*, 788 F.3d 463, 484 (5th Cir. 2015). Therefore, the Court should "review with deference damage awards based on intangible harm, because the harm is subjective and evaluating depends considerably on the demeanor of witnesses." *Tureaud v. Grambling State Univ.*, 294 F. App'x 909, 916 (5th Cir. 2008). Indeed, this Circuit has a "tradition of . . . strong deference to the jury . . . ," *Salinas v. O'Neill*, 286 F.3d 827, 832 (5th Cir. 2002), and a "damage award may be overturned only upon a clear showing of excessiveness . . . ." *Giles*, 245 F.3d at 488.

In this case, the only evidence to support Plaintiff's claim of emotional damages was her own uncorroborated testimony. Moreover, her testimony was remarkably vague. She testified that she was "stressed" over the loss of income, and that she lost some sleep. She did not testify to any other physical manifestations. She did not testify that she sought medical or other professional help. She did not testify that she was humiliated or describe any specific events or occurrences to illustrate the severity of her emotional distress.

Generally, when the Fifth Circuit has affirmed a six-figure emotional distress

12

award, the plaintiffs have provided evidence – even if only in the form of their own testimony – of more serious symptoms and/or effects of the emotional distress in their lives.[3] Those precedents are dissimilar to this case, where Plaintiff only vaguely testified that she was stressed over the loss of income and that she lost some sleep while applying for jobs.

In contrast, the Fifth Circuit has vacated or remitted six-figure awards of emotional damages in cases where the plaintiff's testimony was uncorroborated and vague.[4] Those cases are more comparable to this one, and the highest recovery in such a case was in *Thomas v. Tex. Dep't of Criminal Justice*, 297 F.3d 361 (5th Cir.

---

[3] *See, e.g. Forsyth*, 91 F.3d at 775 ($100,000 award upheld where officer had depression, weight loss, intestinal problems, and marital problems, and consulted a psychologist); *Williams v. Trader Publishing Co.*, 218 F.3d 481, 486 (5th Cir. 2000) ($100,000 award affirmed based on plaintiff's uncorroborated testimony of "severe emotional distress," sleep loss, "severe loss of weight," smoking); *Giles*, 245 F.3d at 488-89 ($100,000 award affirmed where plaintiff's coworker testified as to plaintiff's loss of sleep, headaches, marriage problems, and loss of social prestige); *Salinas*, 286 F.3d at 832 (court remitted award from $300,000 to $100,000 where plaintiff and his wife testified he suffered from paranoia, took sick leave, visited physicians, and impacted relationship with family); *see also Thomas v. Tex. Dep't of Crim. Justice*, 297 F.3d 361, 371 (5th Cir. 2002) (affirming past emotional damages award of $30,000 where plaintiff presented "substantial evidence of acute, past mental anguish," including testimony from corroborating witnesses); *Rizzo v. Children's World Learning Ctrs., Inc.*, 173 F.3d 254, 262 (5th Cir. 1999) ($100,000 award affirmed without discussion of symptoms or evidence); *Idom v. Natchez-Adams Sch. Dist.*, 178 F. Supp. 3d 426, 441-42 (S.D. Miss. 2016) (court declined to remit $100,000 in emotional damages where plaintiff provided detailed evidence from multiple witnesses and documents showing that she had visited doctor, lost sleep, received medication, had high blood pressure, among other symptoms).

[4] *See, e.g. Thomas*, 297 F.3d at 371-72 (remitting future emotional damages award of $90,000 to $50,000 where evidence showed emotional issues had subsided, plaintiff had new job she enjoyed, and no evidence demonstrated link between adverse employment action and future emotional damage); *Flowers v. S. Reg'l Physician Servs., Inc.*, 247 F.3d 229, 236-37 (5th Cir. 2001) ($100,000 award in harassment case remitted because plaintiff's testimony was uncorroborated and symptoms occurred after discharge); *Vadie v. Miss. State Univ.*, 218 F.3d 365, 375 (5th Cir. 2000) ($300,000 award remitted to $10,000 because plaintiff's testimony was uncorroborated and vague); *Patterson v. P.H.P. Healthcare Corp.*, 90 F.3d 927, 940 (5th Cir. 1996) (awards of $40,000 and $150,000 remitted to nominal damages because both plaintiffs' testimony was uncorroborated and vague); *see also Migis*, 135 F.3d at 1046-47 (affirming award of $5,000 in emotional damages where only evidence was plaintiff's uncorroborated testimony).

2002). In *Thomas*, the jury awarded the plaintiff $30,000.00 for past emotional damages and $100,000.00 for future emotional damages. *Id.* at 364. The defendant argued on appeal that both awards should have been remitted, and the Fifth Circuit considered each award separately. *Id.* at 369-71. The Fifth Circuit affirmed the jury's award of $30,000.00 for past emotional damages, noting significant evidence presented at trial. *Id.* at 371. However, it found that the much greater award for future emotional damages rested on "substantially weaker evidence." *Id.* The plaintiff had not presented "any medical evidence connecting her past job-related stress to her current physical condition," and "witnesses testified that [her] emotional difficulties [had] lessened substantially." *Id.* She also enjoyed her current job. *Id.* In short, there was no "evidence tightly linking the denial of a promotion and future emotional harm." *Id.* Accordingly, the Court found that $50,000.00 was the most the jury could have properly awarded, applied the requisite 150% multiplier, and remitted the $100,000.00 award to $75,000.00. *Id.* at 371-72.

This case is similar to the future emotional damages award from *Thomas* in that there is little to no evidence of any emotional harm or any link between that harm and the adverse employment decision. Therefore, the Court finds that the jury could only properly have awarded up to $50,000.00 in emotional damages. The maximum recovery rule requires the Court to add another 50% to this figure. Accordingly, the Court remits Plaintiff's emotional damages from $100,000.00 to $75,000.00. Plaintiff may accept that amount or have another trial on emotional

damages.

### III. CONCLUSION

For these reasons, the Court **grants in part and denies in part** Defendant's Motion for Judgment as a Matter of Law or Remittitur [52]. The Court remits Plaintiff's award of emotional damages from $100,000.00 to $75,000.00. Plaintiff may accept this amount or have a new trial on emotional damages. The Court denies Defendant's motion in all other respects.

SO ORDERED AND ADJUDGED this 3rd day of August, 2021.

                                        /s/   Keith Starrett
                                          KEITH STARRETT
                             UNITED STATES DISTRICT JUDGE